## Case No. 8,293.

### The LEVI ROWE.

[Blatchf. Pr. Cas. 323.] [1]

District Court, S. D. New York. Jan. Term, 1863.

JUDICIAL DISCRETION—LEAVE TO PUT IN FURTHER EVIDENCE.

There being probable cause, on all the evidence, to believe that the vessel was engaged in an attempt to violate the blockade, the court suspended a final decision, with leave to the libellants to put in further proofs as to the place at which the capture was made, and as to the purpose of the voyage, at any time within one year.

In admiralty.

BETTS, District Judge. The libel alleges the capture as prize of this schooner at sea, six miles from the coast of North Carolina, by the United States gunboat Mount Vernon, November 29, 1862, and that she was thereupon brought into this port for adjudication. The suit was instituted December 17, 1862. Process of attachment and a monition was issued from the court on the same day, and were duly returned by the marshal January 6, 1863, and after procla-

[1] [Reported by Samuel Blatchford, Esq.]

mation made in open court, no appearance being given thereupon, a decree by default was, on motion of the district attorney, regularly entered against all persons having any interest in the aforesaid prize, and the vessel's papers and the preparatory proofs were submitted to the court by the district attorney, who moved the consideration and judgment of the court upon the same. The vessel's documents are a certificate of British registry issued to Joseph Eneas, of New York, as owner, dated at Nassau, New Providence, September 21, 1861; a shipping agreement made at the same place November 10, 1862, for a voyage to Beaufort, North Carolina, and back to Nassau; a clearance at the same place the same day for Beaufort aforesaid, with a cargo of ten barrels of oranges and two thousand four hundred bushels of salt; also a log-book. The president's proclamation of May 12, 1862, and the circular of the secretary of the treasury thereunder of the same date, and a license granted to the vessel at Nassau November 11, 1862, legalized the above-mentioned voyage, and exempted the vessel from liability to seizure for trading with or entering the port of Beaufort, North Carolina. A charter-party, executed by Sawyer & Manendez, as owners of the vessel, to James M. Taylor, was found on board of her, dated at Nassau November 11, 1862, for a voyage to Beaufort, North Carolina, thence to New York and back to Nassau. The master of the vessel and all persons concerned in the voyage knew that the ports of North Carolina, except Beaufort, were under blockade. The master testifies that the vessel was thirty-five miles south of Beaufort and ten miles from land on the North Carolina coast, when captured. Taylor, the supercargo, the only other witness, gives about the same testimony as to the time and place of the capture. Both of them fix the distance to be about thirty-five miles from Beaufort, but neither of them names the place nearest which she was captured. They both assert she was steering for Beaufort, and was sailing towards the land and away from Mount Vernon. The prize master testifies, in his deposition verifying the arrest and the papers taken from the prize, that the vessel was, when captured, standing directly into Topsail Inlet, about six miles off shore. The log-book makes no mention of the capture or of the position of the vessel at the time of her arrest, nor does it enter the proceedings of the vessel on the 28th of November, the day of her seizure. The master testifies that the arrest was made about noon of that day.

The testimony of both of the witnesses shows that the vessel and the lading were considered by them to be the property of Sawyer & Manendez. No proof exists on the papers that the title to the vessel ever passed to them from her American owner; but whether she was owned by them or by

Eneas, the American proprietor, any attempt to evade the blockade at Topsail Inlet would be illegal, and would subject her to condemnation. There is a palpable reserve in the log and in the statements of the witnesses examined in preparatorio, which, connected with the circumstances surrounding the voyage, affords probable cause for the belief that the vessel was engaged in an illicit adventure, and this is so strongly made out that I shall suspend a final decision in the case, with leave to the libellants to put in further proofs as to the point or place at which the capture was made, and also as to the purpose of the voyage, at any time within one year after the entry of the decree on this decision.

[The libellants having presented further evidence in pursuance of the order of the court, a decree of condemnation was pronounced against the schooner. Case No. 8,294.]